Gants, J.
The individual plaintiffs, on behalf of themselves and all others similarly situated, seek to be certified as representatives of the class of all persons and entities who purchased “unbranded” and/or adulterated gasoline, rather than the advertised “branded” Citgo or Gulf gasoline, from gasoline stations in Massachusetts supplied by gasoline distributor Energy North, Inc. (“Energy North”) for the period from January 1, 1994 through the present (“the putative class"). In addition, a substantial number of motions are pending that were filed by the named defendants, some referring to complaints that have since been amended. I will decide the issue of class certification and all other pending motions in this decision. Since there are many motions to be decided that were filed at many different times in this litigation, I believe that clarity will best be served by first describing the chronology of this litigation and, where appropriate, deciding certain pending motions during the course of that chronology.
Chronology of the Litigation
On February 5, 1998, Susan Olson, as the representative of the putative class, filed the original class action complaint against Energy North alone. Service of process on Energy North was not made until May 6, 1998. On May 28, 1998, Olson filed the first amended class action complaint as a matter of right under Mass.R.Civ.P. 15(a), adding as defendants Paul Tabacco, Matthew Gaeta, Gaeta’s Auto Services, Inc., Gaeta Towing Services, Inc., Yacoub Aoude, Elias Aoude, Nabih Aoude, Quarry Automotive, Inc., Aoude Petroleum Corporation, and Khaista Rahman, dba Brockton Citgo. On June 2, 1998, Energy North filed a motion to dismiss the original complaint pursuant to Mass.R.Civ.P. 12(b)(6) on the grounds that each count of the complaint failed to state a claim upon which relief could be granted. This Motion to Dismiss is. DENIED AS MOOT in view of the filing of the first amended class action complaint and the subsequent filing by Energy North of a motion to dismiss that first amended complaint.
On June 11, 1998, a separate class action complaint, Civil No. 98-02956, was filed in Middlesex County Superior Court by putative class representatives Ottavia Turner and William Mack against the defendants Gaeta Energy, Inc., Gaeta’s Auto Service, Inc., and Matthew Gaeta, making allegations similar to those in this case.
On July 30, 1998, the plaintiff Olson filed her motion for class certification. On that same date, motions to dismiss the first amended class action complaint were filed by Energy North and by Matthew Gaeta, Gaeta’s Automotive Services, Inc., and Gaeta Towing Services, Inc. (“the Gaeta defendants”). On August 17, defendants Paul Tabacco and Khaista Rahman filed separate motions to dismiss the first amended class action complaint. All these motions were heard together on September 16, 1998. At that hearing, plaintiffs attorney asked for leave to add class representatives in an attempt to cure problems of standing and typicality raised by the defendants. This Court granted leave to amend the first amended complaint in order to name additional plaintiffs who purchased gasoline from each of the defendants during the putative class period.
A second amended class action complaint was filed on October 20, 1998, adding the plaintiffs found on the caption above, including Ottavia Turner and William Mack, who had earlier filed their own class action complaint in Middlesex Superior Court. However, this second amended class action complaint went beyond the leave granted by the Court to add plaintiffs, and made at least four other significant changes to the complaint. First, it omitted as defendants Paul Tabacco and Khaista Rahman dba Brockton Citgo; in essence, the plaintiffs acted to dismiss them from the case. Since Tabacco and Rahman had filed motions to dismiss the complaint against them, the proper course would have been to file a stipulation of dismissal or to seek an order of this Court under Mass.R.Civ.P. 41(a). This Court construes the second amended complaint as, effectively, a motion to dismiss the defendants Tabacco and Rahman under Mass.R.Civ.P. 41(a)(2). In the absence of any objection by the defendants Tabacco and Rahman to the filing of the second amended complaint, this Court ALLOWS the plaintiffs’ motion to dismiss Tabacco and Rahman, and dismisses the action against them without prejudice.[1] In view of the dismissal of the action against Tabacco and Rahman, the Motions to Dismiss brought by Tabacco and Rahman are DENIED AS MOOT.
Second, it added two defendants — Kenneth Black and Gaeta Energy, Inc. The latter was a defendant in the related Middlesex action; the former has not been a defendant in either case.
Third, it sought to extend the class period from January 1, 1994 through the present to January 1, 1990 through the present. Perhaps in support of this attempt to expand the class period, the second amended complaint also added an allegation of fraudulent concealment.
Fourth, it added a fourth cause of action, alleging a breach of the implied warranty of merchantability. This cause of action had been pleaded in the Middlesex action.
On November 3, 1998, the plaintiffs moved to consolidate the two class actions. On that same date, Energy North and the Gaeta defendants moved to strike the second amended complaint to the extent that it exceeded the addition of plaintiffs allowed by my order.
*496 I will address the motion to strike the second amended complaint and to consolidate the two class action complaints first.
I. The Motion by Energy North and the Gaeta Defendants to Strike the Second Amended Complaint
Once responsive pleadings have been served (as they have here), a plaintiff may amend her complaint only by leave of court or with the written consent of the adverse party. Mass.R.Civ.P. 15(a). Plaintiff Olson, orally at the hearing on September 16, 1998 and in writing on September 18, sought leave only to amend the first amended complaint for the purpose of adding plaintiffs who purchased gasoline from each of the defendants during the class period, and this Court granted leave only for that purpose. As detailed above, however, when the second amended complaint was filed, it went well beyond the addition of new plaintiffs. The plaintiffs’ decision to take this liberty was unfortunate, since it generates confusion in the record as to the status of the second amended class action complaint. This Court is well aware that leave to amend “shall be freely given when justice so requires.” Mass.R.Civ.P. 15(a). Yet, even if leave to amend ultimately may be in the interests of justice, it may not be presumed without being asked for and granted. Here, leave to amend has not yet even been requested or allowed beyond the addition of new plaintiffs.
Therefore, the Motion to Strike the second amended class action is ALLOWED, except with respect to the addition of new plaintiffs and the allegations that pertain to the addition of those new plaintiffs. To avoid the confusion which has been engendered, the plaintiffs shall file with the Court within 14 days of this Order a revised second amended class action complaint that includes only the addition of new plaintiffs, the allegations that pertain to the addition of those new plaintiffs, and the dismissal of Tabacco and Rah-man from the case. If the plaintiffs wish to amend their complaint to add Black and Gaeta Energy, Inc. as defendants, to extend the class period, to allege fraudulent concealment, and to add a count alleging breach of an implied warranty of merchantability, they must seek leave of Court under Mass.R.Civ.P. 15(a) to file a third amended class action complaint. Nothing in this decision should be understood as speaking to the merits of such a motion for further leave to amend.
II. The Plaintiffs’ Motion for Consolidation
The plaintiffs move to consolidate this earlier filed case with the similar Middlesex case of Ottavia Turner and William Mack v. Gaeta Energy, Inc. et al., Civ. No. 98-02956. Under Mass.R.Civ.P. 42(a), “(w)hen actions involving a common question of law or fact are pending before the court, in the same county or different counties, it may order ... all the actions consolidated." Consolidation is certainly appropriate here, where the two cases involve common questions of fact and law that may most efficiently be adjudicated in a consolidated action. For that reason, the Motion to Consolidate is ALLOWED. With consolidation, the Court may consider ordering discovery in the two cases to proceed on a common track and may order that some or all of the issues in the two cases be joined for trial. Consolidation is also appropriate here because, with the addition of the two plaintiffs in the Middlesex case-to the Norfolk case and the certification of the class as to all but the fraud and deceit claim in the Norfolk case (discussed infra), the Middlesex case becomes mostly redundant except as to certain allegations and claims not found in the Norfolk case. Indeed, lest there by any confusion, let me clarify that this order of consolidation does not mean that the plaintiffs’ case in the Middlesex case is certified as a class action or that the allegations and claims unique to the Middlesex case may now be deemed incorporated into the Norfolk case. The decision below regarding class certification pertains only to the Norfolk case, not to the Middlesex case now consolidated, so the allegations and claims unique to that case are not part of the class action but simply claims that the individual plaintiffs in that case may pursue. If those allegations and claims are to be incorporated into the class action, the plaintiffs must seek leave to file a third amended class action complaint in accordance with Mass.R.Civ.P. 15(a).
II. Plaintiffs’ Motion for Class Certification •
The individual plaintiffs, on behalf of themselves and all others similarly situated, seek to be certified as representatives of the class of all persons and entities who purchased “unbranded” and/or adulterated gasoline, rather than the advertised “branded” Citgo or Gulf gasoline, from gasoline stations in Massachusetts supplied by gasoline distributor Energy North for the period from January 1, 1994 through the present. The plaintiffs allege that Energy North devised a fraudulent scheme whereby it knowingly sold unbranded gasoline to gasoline stations that sell only branded Citgo or Gulf branded gasoline, which in turn sold this unbranded gasoline to its customers — the putative class — as branded gasoline. Since branded gasoline is supposedly of higher quality, it allegedly costs roughly ten cents more per gallon than unbranded gasoline. The plaintiffs allege that Energy North and the dealer defendants (who allegedly knew of this scheme and participated in it) fraudulently pocketed the difference between the higher price paid by their customers for what they thought was branded gasoline and the cost of the less expensive unbranded gasoline their customers were actually pumping into their cars. The plaintiffs allege three causes of action: violations of the Massachusetts Consumer Protection Act, G.L.c. 93A, §§2, 9, and 11, fraud and deceit, and breach of contract.[2]
Under Mass.R.Civ.P. 23, an action may be maintained as a class action only if the court finds:
*497 1. “the class is so numerous that joinder of all members is impracticable,”
2. “there are questions of law or fact common to the class,”
3. “the claims or defenses of the representative parties are typical of the claims or defenses of the class,”
4. “the representative parties will fairly and adequately protect the interests of the class,”
5. “the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,” and
6. "a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
Mass.R.Civ.P. 23(a) and (b). While these requirements govern the common law claims, they do not govern the claim made under c. 93A. Baldassari v. Public Finance Trust, 369 Mass. 33, 40 (1975) (subsequent adoption of Rule 23 was not intended to curtail any remedial rights granted by c. 93A). With respect to that claim, an action may be brought as a class action if the court finds:
1. “the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated,"
2. the putative class representative “adequately and fairly represents such other persons,” and
3. the putative class representative brings “the action on behalf of himself and such other similarly injured and situated persons ...”
G.L.c. 93A, §9(2). In determining whether the standards of a class action are met with respect to a c. 93A claim, “ ‘a judge must bear in mind a pressing need for an effective private remedy’ for consumers, and that ‘traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.’ ” Fletcher v. Cape Cod Gas. Co., 394 Mass. 595, 606 (1985) quoting Baldassari v. Public Finance Trust, 369 Mass. at 40-41.
A. The Class Action Requirements on the c. 93A Claim
Since the heart of this class action is the c. 93A claim, I will address those class action requirements first. The crux of the c. 93A allegations is that Energy North sold unbranded gasoline to both witting dealer defendants and unwitting gasoline dealers, all of whom advertised that they sold only branded gasoline. Customers then purchased the unbranded gasoline from these dealers, understanding from the advertising that they were purchasing branded gasoline and paying the higher price normally paid for branded gasoline. These same unfair and deceptive acts and practices are alleged to have caused the same injury (paying the higher branded price for unbranded gasoline) to all members of the putative class — the customers of the affected dealers. While all customers may not have been presented with precisely the same advertising, the differences pale in comparison to the similarities: all drove into a gasoline station that said “Citgo” or “Gulf’ and pumped gasoline from pumps that indicated that the gasoline was formulated by Citgo or Gulf, when in fact the gasoline allegedly was not formulated by either. The focus of a trial on this claim will be on the conduct of the defendants, and that presentation will be essentially the same whether the plaintiffs are the 19 individually named or the class of all gasoline customers of these dealers. The reliance of the customers on the alleged misrepresentations is not an element of a c. 93A claim and need not be proven for the plaintiff class to prevail on this claim. Dalis v. Buyer Advertising, Inc., 418 Mass. 220, 225 (1994); International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 849 (1983). Therefore, I find that “the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated.”
At least one of the putative class representatives has purchased allegedly misbranded gasoline from each of the named dealer defendants, and all of the dealer defendants purchased that gasoline from Energy North. Since all customers who went to a dealer defendant were faced with the same advertising, at least with respect to the signs at the gasoline station and on the pumps, there is no reason to believe that the named plaintiffs are atypical of the class or that they for any reason would not adequately and fairly represent the unnamed members of the class.
Nor is there any reason to believe that counsel for the putative class representatives will not adequately and fairly represent the class. While I have seen little of the work of the Law Office of Robert Weiner, who only recently entered the case on behalf of the plaintiffs, I am veiy familiar with the work performed by the other law firm representing the plaintiffs — Berman, DeValerio & Pease, LLP. This firm is perhaps the most experienced law firm in Massachusetts in its representation of class action plaintiffs, and I have been impressed by the high quality of their work in this and other class action cases. I have no reason to doubt that their representation will be both adequate and fair to the members of the class. Therefore, the three legal requirements have been met for a class action under c. 93A.
I also find that a class action is the only means presently available to provide “an effective private remedy” to the gasoline customers allegedly shortchanged by the alleged fraudulent scheme. See Fletcher, supra at 606, quoting Baldassari v. Public Finance Trust, 369 Mass. at 40-41. If the plaintiffs’ allegations are proven, the defendants have fraudulently sold unbranded gasoline at branded prices, cheating customers of roughly a dime per gallon. Given *498 the high volume of sales alleged, this scheme may have caused the class of customers to overpay millions of dollars for their gasoline over the period alleged. Yet, the amount of money lost by even the largest single gasoline customer is unlikely to reach many thousands of dollars, and the average customer’s losses are likely to reach, at most, many hundreds of dollars. Without a class action, no customer would have the economic incentive to bring a law suit of the magnitude needed to prove these allegations. Pragmatically, if a class is not certified to bring this claim, the claim will not be brought by any individual or group of individuals.
The defendants note that the Massachusetts Attorney General has the legal authority to bring a claim against the defendants alleging unfair and deceptive acts and trade practices under G.L.c. 93A, §4 on behalf of the aggrieved customers, and may seek restitution for the customers through such litigation. The defendants contend that an action by the Attorney General is much superior to a class action in a case of this nature because the same relief can be fashioned and that relief will not be diminished by the need to pay attorneys fees. An action brought by the Attorney General under c. 93A, §4, depending on its nature and scope, may indeed be preferable to this class action, but no such action has yet been brought even though the Attorney General is well aware of these allegations.[3] This Court will not deny class certification based on the possibility that the Attorney General will bring an action that he has yet to bring and not represented to this Court that he will bring. Nor can this Court determine whether an action brought by the Attorney General is a more sensible means than this class action to provide a remedy for the fraud alleged here without scrutinizing the Attorney General’s complaint or knowing whether it will be filed.
I am mindful that it will be difficult to identify most of the members of the class and impossible to identify many. I also recognize that it will be difficult to locate many of those that can be identified. I also know that, with respect to those than can be identified and located, it will be difficult to determine how much gasoline they purchased during the class period and how much they lost as a result of the alleged scheme to defraud, especially if they did not purchase all of their gasoline with a credit card. Yet, the difficulty in identifying and locating the members of the class and ascertaining the amount of damages should not defeat class certification where the alternative is to leave those aggrieved without a remedy and to permit those who allegedly perpetrated the fraud to keep the ill-gotten gains. See generally; Yaffee v. Powers, 454 F.2d 13 62 (1st Cir. 1972); In re Activision Sec. Litig., 621 F.Sup. 415, 434 (N.D. Cal. 1985). If liability is established, creative ways will simply need to be fashioned to disgorge the fraudulently obtained monies and distribute them equitably to the aggrieved class. See, e.g., Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34, 38 (S.D.N.Y. 1977), appeal dismissed, 574 F.2d 656 (2d Cir. 1978).
For these reasons, the Motion for Class Certification to bring the cause of action under G.L.c. 93A, §9(2) is ALLOWED. It is hereby ordered that the individual plaintiffs are certified as representatives of the aggrieved class identified in the first amended class action complaint to bring their claim under G.L.c. 93A, §9(2).
B. The Class Action Requirements Under Mass.R.Civ.P. 23 on the Remaining Claims
As stated above, in determining whether the plaintiffs may sue as representatives of the class with respect to the remaining claims, this Court must find that the six requirements set forth in Mass.R.Civ.P. 23 have been satisfied. For the sake of clarity, I will address each of these requirements in order:
1.The class is so numerous that joinder of all members is impracticable.
I find that this requirement of numerosity has been plainly satisfied. It would be utterly impracticable to identify, locate, and join as plaintiffs each of the thousands of persons who allegedly purchased unbranded gasoline during the class period from service stations supplied by Energy North that advertised only branded gasoline.
2. There are questions of law or fact common to the class.
There plainly are questions of law and fact common to the class focusing on whether the defendants participated in a scheme to sell unbranded gasoline to customers who reasonably believed, based on the defendant’s advertising and signage, that they were buying branded gasoline.
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class.
The existence of this requirement was vigorously challenged by the defendants based on the first amended complaint, in which the only plaintiff was Susan Olson, who had purchased gasoline only from the Aoude defendants. Their arguments of standing and typicality are rendered moot by the filing of the second amended complaint, which added 18 plaintiffs. Based on the allegations in the second amended complaint, gasoline has been purchased from every dealer defendant by one or more of these 19 plaintiffs. The named plaintiffs include men and women gasoline customers and one corporate gasoline customer. The defendants have given no persuasive reason why the claims and defenses of these 19 individual plaintiffs are not typical of that of the class.
4.The representative parties will fairly and adequately protect the interests of the class.
As stated above, I find that these representatives and the law firm of Berman, DeValerio & Pease, LLP *499 they have chosen to represent them will fairly and adequately protect the interests of the class.
5. The questions of law or fact common to the members of the class predominate over my questions affecting only individual members.
In determining whether common questions of law or fact predominate over questions affecting individual members, this Court must examine the questions of law and fact that are likely to arise with respect to each of the remaining claims. “Although common questions need not be dispositive of the entire class action, . . . their resolution should at least provide a definite signal of the beginning of the end." Fletcher v. Cape Cod Gas Co., 394 Mass. at 603 quoting Mertens v. Abbott Laboratories, 99 F.R.D. 38, 41 (D.N.H. 1983). In examining this issue, this Court should look closely at whether the issue of liability can be decided on a classwide basis. See Fletcher, supra at 604.
With respect to Count II, alleging fraud and deceit, the issue of liability cannot be decided on a classwide basis, because actual reliance by the plaintiffs on the defendants’ alleged misrepresentations is a necessary element of a claim of fraud or deceit. Nei v. Burley, 388 Mass. 307, 311 (1983). Therefore, if the fraud and deceit claim were to proceed on a classwide basis, the plaintiff class could not prevail on the claim unless there were separate trials on the essential element of actual reliance, with evidence focused on each member of the plaintiff class. See Green v. Wolf Corp., 406 F.2d 291, 302 (2d Cir. 1968). While this is theoretically possible, it is realistically not going to happen. There are likely thousands of plaintiffs, most of them difficult to identify and locate, and virtually all of those who can be identified and located will be able to claim only a small amount of damages if they were to prevail on this claim, since neither treble damages, nor punitive damages, nor attorneys fees may be awarded on a common law claim. The fact of the matter is that, regardless of the merits of the plaintiffs’ position, if this claim is allowed to go forward on a classwide basis, it will fail because of legally inadequate proof on the element of actual reliance. I do not believe it appropriate to permit a claim to go forward on a classwide basis that realistically is doomed to failure, especially since Massachusetts law does not permit any class member to opt out of a class action. Fletcher, supra at 602. The better course is to exclude this count from the class action, permit nonplaintiff members of the class who wish to pursue a claim of fraud or deceit to file a separate complaint, and consolidate their cases with this one for discovery and trial. Therefore, with respect to Count II, alleging fraud and deceit, I find that the common questions of law or fact do not predominate over questions affecting individual members.
I find differently as to Count III, alleging breach of contract. Since there was no written contract between the putative members of the class and the defendants, the plaintiffs allege a contract implied in fact from the conduct of the individual gasoline buyers and the retailers. Such an implied contract claim focuses on the conduct of the class members and the defendants in their purchase and sale of gasoline, and does not require proof of the state of mind of each plaintiff. See generally Auringer v. Cochrane, 225 Mass. 273 (1916) (implied in fact contract arises when the parties manifest an intention to be contractually bound by their conduct); Day v. Caton, 119 Mass. 513 (1876) (although no express oral or written contract exists, a court may infer from the objective conduct of the parties or the circumstances that the parties intended to be bound); Nassr v. Com., 394 Mass. 767 (1985) (where one party renders services to another with the expectation of payment and the other party, as a reasonable person, ought to have expected to pay for the services, a court may infer the latter’s obligation to pay).
The conduct of the plaintiffs raises common issues of fact. The transactions engaged in by the plaintiffs that are central to this case are quite simple: they drove into a gas station that had a Gulf or Citgo sign, pumped gasoline from pumps that identified the gasoline as Citgo or Gulf, and paid the amount of money calculated by the pump with either cash, a credit card, or, perhaps, a debit card. There may have been minor variations in this conduct among the plaintiffs but any such variations are unlikely to have any significant consequence on the issue of liability. Compare with Fletcher, supra at 603 (differences in the nature and type of UFFI installations among homeowner members of the class support finding that common questions of fact do not predominate). If liability is established for the class, common questions of fact may not predominate with respect to damages, which depend on the amount of gasoline purchased during the class period by individual members of the class. However, variance among class members as to the amount of damages should not preclude this class action from proceeding, especially since creative approaches may be formulated to compensate the plaintiff class equitably in view of the substantial transaction costs involved in individualized calculations. See Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. at 38.
6. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.
In examining this requirement, this Court must look at “other available methods” and determine whether a class action is superior to those methods to accomplish “the fair and efficient adjudication of this controversy.” Mass.R.Civ.R 23(b). A¿ discussed above, an action brought by the Attorney General under G.L.c. 93A, §4 may, in theory, be superior, but it cannot be said to be an “available method” when such an action has not been brought. The plaintiffs certainly have no legal means to force the Attorney Gen *500 eral to bring such an action on their behalf. The only method available to class members to seek recourse for the scheme to defraud allegedly committed against them is to join individually in this or similar lawsuits. As discussed earlier, this is an utterly unrealistic alternative and far inferior in efficiency to a class action.
For the reasons stated above, the Motion for Class Certification is DENIED as to Count II (fraud and deceit) and ALLOWED as to Count III (breach of contract) . The individual plaintiffs are hereby certified as representatives of the aggrieved class identified in the first amended class action complaint to bring their claims under Count III.
II. Motions to Dismiss
A. The Gaeta Defendants’ Motion to Dismiss
The Gaeta defendants move to dismiss the first amended complaint on four grounds. First, they claim that Olson lacked standing to bring a claim against them, since she admittedly did not purchase any gasoline from them. This Court need not address this argument in view of the addition of new plaintiffs, some of whom allegedly have purchased misbranded gasoline from the Gaeta defendants.
Second, they contend that the c. 93A demand letter sent to them by the plaintiff fails to satisfy the requirements of G.L.c. 93A, §9 because it did not identify the dates on which the putative class purchased gasoline from the Gaetas. Under c. 93A, §9, a written demand for relief must be mailed to the defendant “identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered . . .’’ G.L.c. 93A, §9. See also Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). I have examined the demand letter sent to Gaeta on April 23, 1998, and find that it satisfies the legal requirements for such a letter. It identifies the plaintiff and the putative class, reasonably describes the fraudulent scheme alleged and the injury suffered by the aggrieved gasoline customers, and identifies the putative class period as having commenced on January 1, 1994 and continuing until the present. A demand letter in the context of this case does not need to identify with precision the dates that misbranded gasoline was allegedly purchased from the Gaetas. Such detail well exceeds the reasonable description mandated by the statute. Moreover, in the context of this case, it would be unlikely that any plaintiff realistically could identify all the dates over the past four years in which she purchased gasoline from a particular gasoline station, so imposing such a requirement would effectively bar these plaintiffs from relief under c. 93A. Finally, given the allegations in this case, which allege a continuing scheme to sell misbranded gasoline supplied by Energy North, precise dates would not meaningfully advance any of the interests fostered by the demand letter requirement. See Slaney, supra at 704-05.
Third, the Gaetas allege that the first amended complaint fails to allege fraud with the specificity required under Mass.R.Civ.P. 9(b). To the extent that this argument rests on the absence of any claim that a named plaintiff purchased misbranded gasoline from a Gaeta gasoline station, that problem has been cured by the addition of new plaintiffs in the second amended complaint who make these specific allegations. To the extent that it is based on the argument that the first amended complaint fails to state the fraudulent scheme with specificity, that argument fails on the merits.
Fourth, and finally, the Gaetas seek dismissal of the breach of contract claim because Olson never purchased gasoline from the Gaetas. This problem has been cured by the addition of new plaintiffs who did.
Therefore, for the reasons stated above, the Gaeta defendants’ Motion to Dismiss is DENIED.
B. Energy North’s Motion to Dismiss
Energy North, like the Gaeta defendants, has moved to dismiss the first amended class action complaint based on the alleged inadequacy of the demand letter and the alleged failure to plead the claim of fraud and deceit with specificity. For the same reasons just stated, those grounds fail on the merits. Energy North argues one ground for dismissal, however, distinct from that available to the Gaetas — that the breach of contract claim must be dismissed under Mass.R.Civ.P. 12(b)(6) against Energy North because no plaintiff directly purchased gasoline from Energy North, a wholesale gasoline distributor.
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiff which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “[The] complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (“[A] complaint is not subject to dismissal if it would support relief on any theory of law”).
Here, the plaintiffs do not allege that they purchased any gasoline directly from Energy North but rather that they purchased misbranded gasoline from dealer defendants who conspired with Energy North to sell them the misbranded, overpriced gasoline. Based on the allegations in the first amended complaint, Energy North was an integral part of this fraudulent scheme, since it supplied the unbranded gasoline, and conspired and combined with the dealer defendants to cause them to sell the unbranded gasoline as branded gasoline. In view of the allegations of conspiracy, I cannot find beyond a doubt that the *501 plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Baron v. Fontes, 311 Mass. 473, 475 (1942). Energy North’s Motion to Dismiss, therefore, must be DENIED.
ORDER
For the foregoing reasons, this Court ORDERS that:
1. The Motion to Dismiss filed by Energy North on June 2, 1998 is DENIED AS MOOT in view of the filing of the first amended class action complaint and the subsequent filing by Energy North of a motion to dismiss that first amended complaint.
2. The individual plaintiffs’ implicit Motion to Dismiss Tabacco and Rahman is ALLOWED. This action brought by the individual plaintiffs against them is hereby dismissed without prejudice.
3. In view of the dismissal of the action against Tabacco and Rahman, the Motions to Dismiss brought by Tabacco and Rahman are DENIED AS MOOT.
4. The Motion to Strike the second amended class action is ALLOWED, except with respect to the addition of new plaintiffs and the allegations that pertain to the addition of those new plaintiffs. To avoid the confusion which has been engendered, the plaintiffs shall file with the Court within 14 days of this Order a revised second amended class action complaint that includes only the addition of new plaintiffs, the allegations that pertain to the addition of those new plaintiffs, and the dismissal of Tabacco and Rahman from the case. If the plaintiffs wish to amend their complaint to add Black and Gaeta Energy, Inc. as defendants, to extend the class period, to allege fraudulent concealment, and to add a count alleging breach of an implied warranty of merchantability, they must seek leave of Court under Mass.R.Civ.P. 15(a) to file a third amended class action complaint. Nothing in this decision should be understood as speaking to the merits of such a motion for further leave to amend.
5. The Motion for Consolidation of the earlier filed instant case with the similar Middlesex County Superior Court case of Ottavia Turner and William Mack v. Gaeta Energy, Inc. et al., Civ. No. 98-02956, is ALLOWED.
6. The Motion for Class Certification to bring the cause of action in Count I under G.L.C. 93A, §9(2) of the first amended class action complaint is ALLOWED. The individual plaintiffs named in the second amended class action complaint are hereby certified as representatives of the aggrieved class identified in the first amended class action complaint to bring their claim in Count I under G.L.c. 93A, §9(2).
7. The Motion for Class Certification is DENIED as to Count II (fraud and deceit) and ALLOWED as Count III (breach of contract) of the first amended class action complaint. The individual plaintiffs named in the second amended class action complaint are hereby certified as representatives of the aggrieved class identified in the first amended class action complaint to bring their claims under Count III.
8. The Gaeta defendants’ Motion to Dismiss is DENIED.
9. Energy North’s Motion to Dismiss is DENIED.

Since the dismissal was effectively filed before certification of the class, this dismissal is expressly not approved under Mass.R.Civ.P. 23(c). In short, the dismissal of Tabacco and Rahman does not affect the rights of any member of the class who is not presently a plaintiff in this action and named in the caption above.

As stated earlier, the second amended class action complaint alleges a fourth count: breach of the implied warranty of merchantability in violation of G.L.c. 106, §2-314. Since leave to amend the first amended complaint to add this count has yet to be granted, I do not include it here.

The Attorney General threatened to bring such an action against Gaeta in a letter dated June 5, 1998 but, to my knowledge, no such action has yet been brought. Nor, to my knowledge, has any settlement been reached between Gaeta and the Attorney General that would provide any relief to the allegedly aggrieved customers. No such action, to my knowledge, has even been threatened against any other defendant.